# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **COLIN PETRUS,** on behalf of himself and all other similarly situated, | Case No. 1:24-cv-06872 |
| Plaintiff, | District Judge Jorge L. Alonso<br>Magistrate Judge Jeffrey Cole |
| vs. | |
| **KOPPERS, INC.,** | |
| Defendant. | |

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff Colin Petrus, on behalf of himself and all others similarly situated, brings this putative class action against Defendant Koppers, Inc. as a result of property damages suffered due to noxious odor emissions from Defendant's coal tar plant asserting claims of negligence, private nuisance, and public nuisance.

2. Defendant owns and operates the Koppers Stickney coal tar plant (hereinafter, the "Facility") located at 3900 S. Laramie Avenue, Cicero, Illinois 60804, which releases noxious odors onto Plaintiff's property, constituting a public and private nuisance and causing property damage.

### PARTIES

3. At all times relevant hereto, Plaintiff Colin Petrus has resided and intends to remain at 3723 S. 57th Ave., Cicero, Illinois. Plaintiff is a citizen of the State of Illinois and owns his property.

4. Defendant Koppers, Inc. is a foreign corporation organized under the laws of Pennsylvania with its principal place of business in Pittsburgh, Pennsylvania.

5. Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in Pennsylvania.

6. Defendant, including its predecessors and agents, either constructed or directed the construction of the Facility and exercised control and ownership over the Facility at all times relevant hereto.

7. Upon information and belief, Defendant and its agents have, at all times relevant hereto, operated and maintained the Facility located at 3900 S. Laramie Avenue, Cicero, Illinois 60804.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because there are 100 or more putative Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000) exclusive of interests and costs. Additionally, at least one, if not all, class members are a citizen of a different state from Defendant.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much, if not all, of the property that is the subject of this action is situated in this District.

10. Independent of and in addition to the original jurisdiction under CAFA, this Court has original jurisdiction over this Action under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.

## **GENERAL ALLEGATIONS**

11. Defendant owns and operates a 36-acre coal tar plant located at 3900 S. Laramie Avenue, Cicero, Illinois 60804.

12. Defendant's business operations at the Facility involves the conversion of crude tars-waste products of steel production and petroleum refining into pitch, refined tars, chemical oils, and creosote.

13. The Facility's production footprint is substantial, and at various points the plant has produced as much as 28% of the American market for carbon pitch and 30% of the American market for creosote.

14. Defendant's industrial processes at the Facility involve substantial pollutants, raw materials, and waste products that are naturally highly odiferous.

15. Generally, Defendant's coal tar production process involves distilling coal into its discrete chemical subparts through an intense heating process, then condensing the resultant tar into a distinct product.

16. Defendant produces creosote through a similar distillation and heating process for coal or wood, but a separate chemical subpart is condensed to render creosote as the final product.

17. A properly operated, maintained, and/or constructed Facility such as Defendant's will not emit noxious odors into the surrounding residential areas.

18. The raw materials utilized and waste products generated at the Facility are noxious and highly odiferous, and its processing operations create the foreseeable risk that noxious odor emissions could be emitted into surrounding residential communities if reasonable steps are not taken to mitigate and control them.

19. Defendant is required to control its odorous emissions by, among other things, properly treating odiferous waste products; utilizing adequate odor mitigation and control technologies at the Facility; effectively operating and maintaining its odor mitigation and control techniques to prevent off-site odors; adequately storing and disposing of organic waste utilized during and produced through its industrial processes to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

20. Defendant has, on occasions too numerous to list herein, emitted unreasonable noxious odors into the ambient air outside of the Facility's property boundary.

21. The noxious odors and emissions caused by Defendant's operation of the Facility have been and continue to be dispersed across all public and private land in the Class Area.

22. Defendant's emission control processes are inadequate, improperly maintained and operated, and fail to prevent noxious offsite odors from invading the private property of Plaintiff and the Class.

23. Defendant has failed to properly construct, operate, and/or maintain its Facility to prevent offensive offsite odor emissions, despite knowledge that its Facility repeatedly and continually emits noxious odor emissions into the ambient air.

24. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and property of Plaintiff and the putative Class.

25. Defendant's Facility is surrounded by residential properties.

26. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiff's property, including Plaintiff's neighborhood, residence, and outdoor spaces, have been and continue to be physically invaded by noxious odors.

27. The noxious odors that entered Plaintiff's property originated from, and were caused by, Defendant's Facility.

28. Defendant's Facility and its noxious emissions have been the subject of frequent complaints from residents in the nearby residential area.

29. Defendant's negligent and offensive conduct is further evidenced by the following:

   a. On August 27, 2020, the Illinois Environmental Protection Agency issued the Facility a Notice of Violation because of the Facility's alleged failure to properly monitor and record sulfur dioxide emissions and reduce emissions of hazardous air pollutants.

   b. On July 15, 2021, the Illinois Environmental Protection Agency issued the Facility a Notice of Violation in which it alleged that the Defendant:

      i. Caused or allowed smoke or other particulate matter to escape as a result of a fire on the premises on two separate occasions;

      ii. Failed to follow proper operating practices for its machinery which resulted in fires on two separate occasions; and

      iii. Failed to operate and maintain its machinery in accordance with good air pollution control practices to minimize emissions.

   c. On November 9, 2021, the Illinois Environmental Protection Agency issued the Facility a Notice of Violation in which it alleged that Defendant failed to:

      i. Control hazardous pesticide air pollutants;

      ii. Comply with federal emission standards for pesticide air pollutants;

      iii. Follow proper operating practices for some of its machinery and vent systems; and

      iv. Perform monitoring for its closed vent systems in accordance with federal regulations.

    d. On October 4, 2023, the Illinois Environmental Protection Agency issued the Facility a Notice of Violation which contained **25 separate violations** of environmental laws, regulations and/or permits and alleged that, among other things, Defendant:

        i. Caused or allowed the discharge of pollutants into the atmosphere including but not limited to organic material, volatile organic material ("VOM"), and $SO_2$;

        ii. Failed to properly operate its machinery in compliance with the requirements of federal regulations;

        iii. Failed to properly perform monitoring of its closed vent system in accordance with federal regulations;

        iv. Failed to operate emissions monitoring systems;

        v. Failed to reduce its organic hazardous air pollutants from process vents at the Facility; and

        vi. Exceeded emission limits delineated in its Construction Permit.

    e. Since 2020, there have been two separate fires (December 26, 2020 and March 20, 2021) at the Facility, each emitting large quantities of odorous sulfur dioxide into the surrounding residential community and causing the Facility to temporarily shut down.

    f. Numerous media reports have been published regarding the community's complaints of noxious odors from Defendant's Facility and Defendant's continuous failure to mitigate the same.

30.     The Illinois Environmental Protection Agency has received numerous complaints on its "Pollution Complaint" site regarding the odor emanating from Defendant's Facility:

    a. One complainant reported a "strong industrial odor like burning rubber."

    b. One complainant reported that "[t]he air is filled with a very strong chemical burning smell."

    c. One complainant reported that the strong burning smell "made [him] nauseous after working outside for [a half] hour."

    d. One complainant reported a "[s]trong odor of tar or burning petrochemicals, caus[ing] nausea and headache."

31. In addition, Plaintiff's Counsel has already received over 45 complaints directly from nearby residents concerning the offensive odor on their property originating from Defendant's Facility:

   a. Putative Class Members Antonia Guerrero and Claribel Reyes stated that they "were not able to be in our yards at most times of the day due to the smell. We cannot have cookouts with family and friends, our kids cannot run and play due to the bad quality of air and horrible smell."

   b. Putative Class Members Lawrence and Mary Medolan reported that they "can't sit outside long—such a horrendous smell and could actually taste" and had limited time to open their windows.

   c. Putative Class Member William Sharabaika stated that his "backyard is not usable due to smell" and that the odors cause his eyes to water and burn.

   d. Putative Class Member Luz Maria Pellizzari reported that the odors force her to "stay indoor as much as possible because the smell is horrible and unbearable." She further stated that she experiences the odor "when I go to my backyard or throw out the trash or do gardening or for walks the smell is horrible."

   e. Putative Class Members Juan and Maria Avila stated that due to the odors, "most times you just can't bear to be outside. Doing something as simple as having a cookout is not possible."

32. Defendant, its predecessors, and/or its agents either constructed or directed the construction of the Facility and Defendant exercises control and ownership over the Facility.

33. Despite clear knowledge of its odor emission problem, Defendant continued to frequently emit severe fugitive off-site odors into the ambient air beyond its property.

34. The foul odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damages.

35. Defendant's noxious odor emissions have caused a substantial and unreasonable interference with Plaintiffs' use and enjoyment of his private property.

36. Plaintiff's property has been and continues to be physically invaded by noxious odors that have interfered with the use and enjoyment of that property, resulting in damages.

37. Plaintiff Petrus states that the noxious odors emitted from the Facility preclude him from opening the windows on his home when the weather would otherwise allow or enjoy the outdoor spaces of his property.

38. On at least one occasion, Plaintiff has had to move an outdoor party on his property inside due to the noxious odors from the Facility. As a result, Plaintiff is forced to hold any gatherings at his home inside.

39. Plaintiff's property features a back porch and backyard, both of which he and his family will forgo use of when the noxious odors are present.

40. Plaintiff Petrus further experiences the noxious odors in public spaces throughout the proposed Class Area, including the community park on 34th Street and Laramie, Morton College, and along South 57th Street in his neighborhood when he goes for walks with his children.

41. The Class Area is home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, parks, and education.

42. Plaintiff and the Class are a limited subset of individuals in Cicero and the Class Area that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition. Plaintiffs and the putative Class are not coterminous with the general public.

43. Members of the public in the Class Area, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of loss of use and enjoyment of his private property.

44. Plaintiff and the Class have suffered damages different in kind that are not suffered by the public at large because their injury is an injury to private property.

45. The odors caused by Defendant's Facility have been and continue to be dispersed across public and private land throughout the Class Area.

46. Defendant negligently, knowingly, intentionally, and recklessly failed to properly design, operate, repair, and/or maintain the Facility and its associated operations, thereby causing the unreasonable invasion of Plaintiff's property by noxious odors on unusually severe, frequent, intermittent, and ongoing recurring occasions.

## **CLASS ALLEGATIONS**

a. **Definition of the Class**

47. Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification pursuant to Federal Rule of Civil Procedure 23.

48. Plaintiff seeks to represent a Class of persons preliminarily defined as:

***All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary since August 6, 2024.***

This definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more subclasses if discovery reveals that such subclasses are appropriate.

49. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rules of Civil Procedure in that:

    a. The Class which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

  c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

  d. The claims of the representative parties are typical of the claims of the Class;

  e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

  f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

  g. There are no unusual difficulties foreseen in the management of this class action; and

  h. Plaintiff, whose claim is typical of those of the Class, through his experienced counsel, will zealously and adequately represent the Class.

## B. Numerosity

50. There are approximately 4,675 households within the Class Area.

51. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

## C. Commonality

46. Numerous common questions of law and fact exist between Plaintiff and the Class, including, but not limited to:

  a. Whether and how Defendant negligently, knowingly, intentionally, and/or recklessly failed to design, operate, and maintain the Facility and its operations;

  b. whether Defendant owed any duties to Plaintiff;

  c. which duties Defendant owed to Plaintiff;

  d. which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, design, operation, and maintenance of its Facility and its respective operations;

  e. whether Defendant met its standard of care with respect to its construction, operation, design, and maintenance of the Facility and its operations;

    f. whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

    g. whether it was reasonably foreseeable that Defendant's failure to properly construct, design, operate, and maintain the Facility and its operations would result in an invasion of Plaintiff's property interests;

    h. whether the degree of harm suffered by Plaintiff and the Class constitutes a substantial annoyance or interference; and

    i. the proper measure of damages incurred by Plaintiff and the Class.

### D. Typicality

47. Plaintiff has the same interests in this matter as all the other members of the Class and his claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

48. The claims of Plaintiff and the other Class Members have a common cause and their damages are of the same type. The damages of Plaintiff and the Class are different in kind than those suffered by other members of the broader community who do not hold private residential property interests. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Facility and its operations.

49. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors causing damage to their property.

### E. Adequacy of Representation

50. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiff

as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

51. Plaintiff has retained the services of counsel who are experienced in complex class action litigation, in particular class actions stemming from invasions of noxious industrial emissions. Plaintiff's Counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

**F. Class Treatment is the Superior Method if Adjudication**

52. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

    d. The proposed class action is manageable.

53. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

54. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## CAUSE OF ACTION I

## PRIVATE NUISANCE

55. Plaintiff restates the allegations set forth in all previous paragraphs as if fully rewritten herein.

56. Defendant owed and continues to owe a duty to Plaintiff and the Class, who are neighboring private property holders, to prevent and abate the interference with, and the invasion of, their private property interests.

57. The noxious odor emissions that entered Plaintiff's property originated from the Facility constructed, designed, maintained, and/or operated by Defendant.

58. The odors invading Plaintiff's property are indecent and offensive to the senses, obstruct the free use of their property, and substantially and unreasonably interfere with the comfortable enjoyment of life and/or property, including but not limited to the following ways:

   a. Causing Plaintiff and the Class discomfort and to remain in their homes and forgo use of their yards, porches, and other outdoor spaces of their properties;

   b. Causing Plaintiff and the Class to keep doors and windows closed when weather conditions otherwise would otherwise not require them to do so;

   c. Causing Plaintiff and the Class embarrassment, inconvenience, discomfort, and reluctance to engage in outdoor activities and invite guests to their homes.

59. The odors emitted from Defendant's Facility constitute a substantial and unreasonable invasion of Plaintiff's interests in the use and enjoyment of his property.

60. Defendant's invasion of Plaintiff's property by noxious odors was the result of intentional, reckless, and/or negligent conduct.

61. As stated above, dozens of putative class members have complained to the IEPA and Plaintiff's Counsel concerning the noxious odors emitted from Defendant's Facility.

62. Defendant is aware of the odors that emanate from its Facility and has knowledge of the significant impacts the odors have on nearby residents' lives, yet has failed to adequately abate or correct the conditions causing the nuisance odors.

63. Plaintiff and the Class have suffered physical damages to property as a result of Defendant's nuisance odor emissions, including interference with the use and enjoyment of property, , and discomfort, annoyance, and inconvenience as alleged herein.

## CAUSE OF ACTION II

## PUBLIC NUISANCE

64. Plaintiff restates the allegations set forth in all previous paragraphs as if fully rewritten herein.

65. Plaintiff and the Class utilized their properties as residences and all reside within the Class Area.

66. Defendant's operation and/or maintenance of its Facility is the proximate cause of the noxious odors that enter Plaintiff's property.

67. The unreasonable odors caused by Defendant's Facility have been and continue to be dispersed across public and private land throughout the Class Area.

68. By failing to reasonably design, operate, repair, and maintain its Facility, Defendant has caused an invasion of Plaintiff's property by noxious odors on unusually frequent occasions too numerous to individually list herein.

69. The noxious odors invading Plaintiff's property are indecent and offensive to Plaintiff and the Class, indecent and offensive to individuals with ordinary sensibilities, and obstruct the free use of Plaintiff's property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

70. Defendant knew that it was emitting noxious odors onto neighboring properties yet failed to take reasonably adequate steps to abate the nuisance.

71. Defendant owed and continues to owe a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

72. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and spaces by emitting noxious odors into the ambient air.

73. Defendant, by failing to reasonably repair, operate, and/or maintain its Facility so as to prevent the emission of noxious odors has acted, and continues to act, intentionally, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

74. As a foreseeable, direct, and proximate result of Defendant's conduct as described herein, Plaintiff and the Class have suffered damages to their property.

75. By causing noxious odors that physically invaded Plaintiff's property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiff and the Class's use and enjoyment of their properties on unusually frequent occasions too numerous to individually identify.

76. Such substantial and unreasonable interference includes, but is not limited to:

   a. Loss of use and enjoyment of the outdoor spaces of Plaintiff's property or ability to open windows due to the presence of noxious odors;

   b. Annoyance, inconvenience, and discomfort, including but not limited to, inability to open windows and/or utilize outdoor spaces when odors are present and inability to invite guests to property due to the embarrassment and annoyance of the noxious odors invading Plaintiff's property.

77. Apart from the private property damages incurred by Plaintiff and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

78. Plaintiff suffered and continues to suffer special harm to private property interests, including interference with the use and enjoyment of private land and property. These damages are difference in kind, separate, and in addition to the damages suffered by the public at-large exercising the common right to breathe uncontaminated and unpolluted air.

79. Plaintiff did not consent to noxious odors entering his property.

80. Defendant's substantial and unreasonable interferences with Plaintiff's property rights constitutes a nuisance for which Defendant is liable to Plaintiffs and the Class for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive damages.

**COUNT III**

**NEGLIGENCE**

81. Plaintiff restates the allegations set forth in all previous paragraphs as if fully rewritten herein.

82. In constructing, maintaining, operating, controlling, engineering, and/or designing the Facility, Defendant owes a duty to Plaintiff and the Class to exercise ordinary care and diligence to prevent noxious odors from invading Plaintiff's property.

83. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained, operated, engineered, and/or designed the Facility and knew, or should have known, that such actions would cause Plaintiff's property to be invaded by noxious odors.

84. As a direct and proximate result of Defendant's failure to exercise ordinary care, Plaintiff's property has been and continues to be physically invaded by noxious odors.

85. As a direct and proximate result of Defendant's negligent construction, maintenance, operation, engineering, and/or design of the Facility, Plaintiff's property is exposed to and invaded by noxious odors.

86. As a direct and proximate result of the invasion of Plaintiff's property by noxious odors, Plaintiff has suffered damages as described herein.

87. Defendant is vicariously liable for the negligence of its employees, representatives, and agents, who, during the course and scope of their employment, allowed or failed to correct the problems that caused noxious odors to physically invade Plaintiff's property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiff as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class Members and against Defendant;

D. An Order holding that entrance of the aforementioned noxious odors upon Plaintiff's property constituted a nuisance;

E. An Order holding that Defendant was negligent in its construction, design, operation, and maintenance of the Facility;

F. An award, to Plaintiff and the Class, of compensatory damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

G. An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

H. Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Amended Complaint.

    Respectfully Submitted,

*/s/ D. Reed Solt*

Laura L. Sheets*
Steven D. Liddle*
D. Reed Solt*
**LIDDLE SHEETS PC**
* Admitted Pro Hac Vice
975 E. Jefferson Ave.
Detroit, MI 48207
(313) 392-0015
lsheets@lsccounsel.com
sliddle@lsccounsel.com
rsolt@lsccounsel.com
*Attorneys for Plaintiffs*